1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RICHARD WAYNE, et al.,                    No.  2:25-cv-1113-DAD-CKD (PS)

12                 Plaintiffs,

13        v.                                    FINDINGS AND RECOMMENDATIONS

14   SIERRA COUNTY, et al.,

15                 Defendants.

16

17        Plaintiffs Richard Wayne and Michal Wayne proceed without counsel[1] on their first

18   amended complaint ("FAC") asserting violations of the Americans with Disabilities Act

19   ("ADA"), civil rights violations and conspiracy to violate civil rights, a civil RICO claim, and

20   state law claims. (ECF No. 51.) The defendants have appeared and filed motions to dismiss the

21   FAC. The court held a hearing on August 6, 2025. Plaintiffs appeared in person and attorney

22   Mansour Chopan appeared in person on behalf of Richard Maddelena. Other appearances were

23   via Zoom as follows: Mark Gamble and Penny Gamble pro se; attorney Matthew Cate on behalf

24   of Ryan Steinwert; attorney Jason Savlov on behalf of Sierra Brooks Property Owners

25   Association ("SBPOA") and Rebekah Perez; and attorney Tracy Werner on behalf of Sierra

26   County, Sierra County Board of Supervisors, Sharon Dryden, Paul Roen, Lee Adams, Lila Huer,

27   _____

[1] Because plaintiffs proceed without counsel, this matter is referred to the undersigned by Local
28   Rule 302(c)(21) pursuant to 28 U.S.C. § 636(b)(1).

                                            1

1   Terry LeBlanc, Mike Fisher, Sandra Grovin, Rhetta Vander Ploeg, Van Maddox, Brandon

2   Pangman, Tim Beals, Joseph Danny Zavala, Bonnie Vierra, Elizabeth Morgan, and Michael

3   Filippini.

4   　　For the reasons set forth below, the undersigned recommends the motions to dismiss be

5   granted to the extent the FAC fails to state a federal claim upon which relief can be granted.

6   Jurisdiction for this case is premised on 28 U.S.C. § 1331 and plaintiffs have not pleaded a

7   federal claim over which this court has original jurisdiction. This court should decline to exercise

8   supplemental jurisdiction over the state law claims in the absence of a cognizable federal claim.

9   　　As to most of plaintiffs' federal claims, it clearly appears that granting leave to amend

10  would be futile. However, the undersigned recommends plaintiffs be granted leave to file a

11  further amended complaint presenting a Title II ADA claim against Sierra County, any due

12  process or retaliation claims under 42 U.S.C. § 1983 against County official defendants involved

13  with the permitting process, and any related state-law claims. The other federal claims should be

14  dismissed without leave to amend. Defendants SBPOA, Rebekah Perez, Mark Gamble, Penny

15  Gamble, Ryan Steinwert, Richard Maddelena, Sandra Groven, and Mike Fisher should be

16  dismissed from this case at this time.

17  　　**I.　　Background**

18  　　　　**A.  Plaintiffs' Allegations**

19  　　Plaintiffs initiated this action with their original complaint filed on April 16, 2025. (ECF

20  No. 1.) They filed the operative FAC on May 29, 2025. (ECF No. 51.) The FAC is 70 pages in

21  length, plus exhibits, and pleads causes of action plaintiffs describe as follows: (I) RICO

22  Interference with Interstate Commerce; (II) Intentional Infliction of Emotional Distress and

23  Defamation; (III) Civil Rights Violations under 42 U.S.C. § 1983, Bane Act, FEHA, ADA,

24  UNRUH, and § 1985; (IV) Takings Clause; and (V) Bane Act. Each cause of action contains

25  multiple "counts" pleaded against individual defendants or groups of defendants.

26  　　The FAC alleges plaintiffs were builders by trade and purchased affordable land in the

27  Sierra Brooks subdivision. (ECF No. 51 at 11.) In 2016, they notified Sierra County of their

28  disabilities and were afforded no accommodation at any point in the eight years following. (Id. at

1    13.) In 2017, plaintiffs applied for a permit to develop a low-income single-family development.

2    (Id. at 13.) Plaintiffs requested and were granted a Special Use Permit ("SUP") allowing

3    temporary occupancy of a recreational vehicle during construction of a single-family residence.

4    (Id.)

5         Plaintiffs' construction efforts were hampered and ultimately their home was "short sold."

6    (ECF No. 51 at 13.) Plaintiffs allege they discovered county-wide, coordinated illegal activities

7    involving corruption. The defendants named in this suit include their neighbors, the Sierra Brooks

8    Property Owners Association ("SBPOA") and its Chair, Sierra County and its Board of

9    Supervisors and other employees, the Sheriff, District Attorney, and a journalist. Plaintiffs allege

10   "due process violations, corruption, threats, discriminatory intent, FEHA/UNRUH violations,

11   retaliation for protected speech, malicious and unreasonable inspections, and failures to

12   discharge… statutory duties." (Id. at 12.)

13        The troubles plaintiffs describe began by 2018, when neighbors submitted false

14   complaints about plaintiffs using water from the creek or camping illegally. (ECF No. 51 at 15,

15   18.) Cal. Fire declared the property to be forestland and threatened to fine the plaintiffs for

16   refusing to comply with its "extortionate" actions, stalling their build project. (Id. at 17.)

17        The SBPOA Chair and board members trespassed on plaintiffs' property on July 20, 2018.

18   (ECF No. 51 at 18.) The SBPOA Chair made a "threat of fines" in person and over an email. (Id.

19   at 19.) The SBPOA Chair and various County employees surveilled and harassed plaintiffs and

20   communicated among themselves about alleged code violations which were untrue. (Id. at 22.)

21        On August 27, 2018, plaintiffs demanded an investigation of their neighbors for religious

22   harassment, but the SBPOA Board refused to acknowledge the complaint. (ECF No. 51 at 22.)

23   Through documents received in a PRA request, plaintiffs learned that their disabilities, which

24   affected their income, had made them a target. (Id. at 23.) Plaintiffs attempted to file a complaint

25   about intentional false statements, but Sheriff Mike Fisher and DA Larry Allen would not allow

26   plaintiffs to file. (Id.)

27        Plaintiffs' building process was further delayed when Elizabeth Morgan falsely stated that

28   groundwater was identified on plaintiffs' proposed site for septic, necessitating approval by the

California Water Quality Control Board. (ECF No. 51 at 23-25.) During inspection of the completed septic in August of 2022, Morgan discovered plaintiffs were using a generator and battery system with plans to remain off grid and it was claimed these were "new changes in need of an amendment" to plaintiffs' permit. (Id. at 25.) Within six weeks, "the SBPOA had again forwarded unsubstantiated anonymous complaints" to the County falsely stating plaintiffs' generator was making a lot of noise. (Id. at 26.) No abatement was ordered but these unfounded complaints were later used to defame plaintiffs during hearings in 2024 regarding their SUP. (Id. at 26-27.)

On July 12, 2022, Daniel Zavala came for a "rough" inspection of plaintiffs' operational systems and made many malicious misstatements and incorrect accusations about changes in plaintiffs' plans. (ECF No. 51 at 27, 31.) Mr. Zavala refused to inspect to verify parameters and tolerances and demanded that plaintiffs resubmit engineer-stamped plans before he would do so. (Id. at 27.) Mr. Zavala discriminated against plaintiffs, obstructed their building progress, and failed to perform ministerial duties. (Id. at 32-33.) Plaintiffs demanded he produce his certifications, and he denied having to produce them and complained of being harassed. (Id. at 36.) Plaintiffs allege the inspector's searches and Sierra County's practices had a disparate impact on protected classes. (Id. at 34.)

Plaintiffs complained about the inspector but were coerced by defendants Beals and Dryden from the County Board of Supervisors with "threats" and "veiled threats" that they had to work with him. (ECF No. 51 at 35.) This "effectively initiated the taking of Plaintiff's property and involuntary servitude[.]" (Id.) Plaintiffs' requests for a video inspection and for an alternate inspector from Truckee were refused and they were accused of "inspector shopping." (Id. at 37-38, 63.)

On May 4, 2023, in retaliation for objecting to Mr. Zavala as inspector and for the previous day's complaints, it was claimed that plaintiffs' SUP had expired, and they were effectively evicted from their residence. (ECF No. 51 at 39.) Had video inspection been granted for insulation, the project would have been complete in one month. (Id.) Plaintiffs were never informed of any issues regarding their permits and no hearing was given for them to contest the

1    allegation that permits were expired. (Id.) Plaintiffs tried to file a police report about retaliation

2    and the inspector's failure to produce credentials and were told it was a civil issue. (Id. at 40.)

3        On May 12, 2023, plaintiffs sent an "ADA ordinance mandated request" to the County's

4    ADA Ombudsman who deliberately disregarded it and refused to schedule the mandatory

5    conference procedure. (ECF No. 51 at 41.) A County Board of Supervisors vote was held on May

6    16, 2023, at which defendants Dryden and Roen failed to abstain despite having a financial or

7    pecuniary interest in the topic. (Id. at 42, 45.)

8        Plaintiffs filed a claim for damages with the Board of Supervisors for retaliation and Civil

9    Rights issues on June 11, 2023. (ECF No. 51 at 43.) However, the claim was re-routed to the

10   Planning Board, which did not have jurisdiction to hear a claim for damages. (Id. at 43-44.)

11   Plaintiffs demanded recusals of individuals sitting on the Planning Board which did not occur.

12   (Id. at 44.) No effort was made to negotiate or stop the County's liability for retaliations and

13   instead focus was redirected on the sole issue of the permit decision. (Id. at 43, 45.) A hearsay

14   allegation was made that plaintiffs were living in the house and was never required to be

15   substantiated. (Id. at 54.)

16       Plaintiffs discovered the County had violated statutes regarding storing records about

17   certifications and continuing education. (ECF No. 51 at 49-50, 53.) Plaintiffs contacted Ryan

18   Steinwert who wrote an article fraught with inconsistencies and false statements which showed a

19   preference to public officials and county council by repeating their statements. (Id. at 53-54.)

20       The Sierra County Planning Commission sitting as the Housing Advisory Board and

21   Board of Appeals ("HABBA") held a special hearing on February 1, 2024. (ECF No. 1 at 395-

22   97.) On February 13, 2024, HABBA issued a written decision denying plaintiffs' appeal on the

23   basis that plaintiffs failed to present an issue over which the Board had jurisdiction. (Id. at 398.)

24   On February 22, 2024, plaintiffs filed a notice of appeal to the Sierra County Board of

25   Supervisors. (Id. at 409.) On April 25, 2024, following a hearing, the Board of Supervisors

26   entered Resolution 2024-058 denying the appeal. (ECF No. 1 at 438-40.[2])

27

28   [2] Plaintiffs incorporate the exhibits to their original complaint by reference throughout the FAC.

**B.  Defendants' Motions to Dismiss**

The defendants move to dismiss plaintiffs' claims on various grounds and some defendants alternately request a more definite statement. Defendants assert failure to comply with Rule 8 of the Federal Rules of Civil Procedure, failure to plead compliance with pre-suit administrative or state-law processes, immunities including qualified immunity, lack of standing and ripeness, and statute of limitations. Fully briefed motions to dismiss are before the court as follows.

- (ECF No. 58) Sierra County and Sierra County Board of Supervisors
- (ECF No. 59) Ryan Steinwert, journalist
- (ECF No. 60) Sharon Dryden, member of County Board of Supervisors
- (ECF No. 61) Lila Heuer, member of County Board of Supervisors
- (ECF No. 62) Terry LeBlanc, member of County Board of Supervisors
- (ECF No. 63) Lee Adams, member of County Board of Supervisors
- (ECF No. 64) Paul Roen, member of County Board of Supervisors
- (ECF No. 65) Mark and Penny Gamble, neighbors
- (ECF No. 66) Rhetta Vander Ploeg, County Counsel advising the County Board
- (ECF No. 67) Sandra Groven, District Attorney
- (ECF No. 68) Michael Filippini, member of Planning Commission sitting as the Housing Advisory Board and Board of Appeals
- (ECF No. 69) Elizabeth Morgan, County Environmental Specialist
- (ECF No. 70) Bonnie Viera, County Permit Technician
- (ECF No. 71) Brandon Pangman, County Building Official
- (ECF No. 72) Mike Fisher, Sheriff
- (ECF No. 73) Van Maddox, County Treasurer and Acting ADA Ombudsman
- (ECF No. 74) Daniel Zavala, County Buildings Inspector
- (ECF No. 75) Sierra Brooks Property Owners Association & Rebekah Perez as Chair
- (ECF No. 98) Tim Beals, County Building Official
- (ECF No. 100) Richard Maddelena, Volunteer Fire Fighter

6

1    **II.    Rule 12(b)(6) Legal Standard**

2        Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be warranted

3    for "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

4    cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In

5    evaluating whether a complaint states a claim on which relief may be granted, the court accepts as

6    true the allegations in the complaint and construes the allegations in the light most favorable to

7    the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d

8    1242, 1245 (9th Cir. 1989). Particularly because plaintiffs proceed pro se, the court liberally

9    construes the pleadings and affords plaintiffs the benefit of any doubt. Bretz v. Kelman, 773 F.2d

10    1026, 1027 (9th Cir. 1985). Nevertheless, courts are not required to accept as true allegations that

11    are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. Sprewell v.

12    Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

13        In ruling on a motion to dismiss, a court may consider material properly submitted as part

14    of the complaint and documents not physically attached to the complaint if their authenticity is

15    not contested and the complaint necessarily relies on them. Lee v. City of Los Angeles, 250 F.3d

16    668, 688-89 (9th Cir. 2001). The court may also take judicial notice of facts not subject to

17    reasonable dispute, including matters of public record. See Fed. R. Evid. 201.

18    **III.    Discussion**

19        **A.    Exhaustion**

20        Several defendants argue plaintiffs bring causes of action for which they failed to exhaust

21    administrative remedies or state-law remedies in the form of a petition for writ of mandate. (E.g.,

22    ECF No. 58 at 17-19.) However, claims under Title II of the ADA do not require exhaustion. See

23    Zimmerman v. Oregon Dep't of Just., 170 F.3d 1169, 1177-78 (9th Cir. 1999). In addition, the

24    FAC alleges plaintiffs received a "right to sue" letter from DFEH as to their FEHA claims. (ECF

25    No. 51 at 44, 81.)

26        Some of the defendants assert plaintiffs' claims pertaining to the County's permitting

27    process are barred because a petition for writ of mandate is the appropriate remedy. (E.g., ECF

28    No. 58 at 15; ECF No. 98 at 24.) Defendants argue such a failure grants preclusive effect to the

1  County's administrative decisions. See In re Michael K., 185 Cal. App. 4th 1112, 1126 (2010), as

2  modified on denial of reh'g (July 13, 2010). Defendants do not clearly assert which

3  administrative decisions should be granted preclusive effect and how those decisions preclude

4  plaintiffs' claims. It could be that some of plaintiffs' claims are barred by a failure to file a

5  petition for writ of mandate, but defendants do not meet their burden to obtain dismissal of any

6  claims on this basis. Plaintiffs do not merely challenge the County's administrative decisions, and

7  a failure to exhaust the petition for mandate remedy does not bar any potential relief on all claims.

8      Some of the defendants also cite cases requiring exhaustion of procedures under

9  California law for a Takings claim. (E.g., ECF No. 58 at 18.) The Supreme Court has overruled

10  the "state-litigation requirement" for Takings claims. Knick v. Twp. of Scott, Pennsylvania, 588

11  U.S. 180, 185 (2019). For all these reasons, defendants' motions should be denied to the extent

12  they assert failure to exhaust.

13                          **B.  Takings Claim**

14      "The Fifth Amendment's guarantee that private property shall not be taken for a public

15  use without just compensation was designed to bar Government from forcing some people alone

16  to bear public burdens which, in all fairness and justice, should be borne by the public as a

17  whole." Armstrong v. United States, 364 U.S. 40, 49 (1960). Claims alleging governmental

18  interference with property rights may fall under the Fifth Amendment's Takings Clause. See

19  Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537 (2005) ("if regulation goes too far it will be

20  recognized as a taking"). Setting aside permanent physical invasions and regulations that deprive

21  an owner of all economically beneficial use of the property, regulatory takings challenges are

22  governed by the standards set forth in Penn Central Transp. Co. v. New York City, 438 U.S. 104

23  (1978). See Lingle, 544 U.S. at 538-39. Under Penn Central, a court considers: "(1) the economic

24  impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with

25  distinct investment-backed expectations; and (3) the character of the governmental action." Murr

26  v. Wisconsin, 582 U.S. 383, 393 (2017) (citation omitted). The relevant focus is on the severity of

27  the burden imposed upon private property rights. Lingle, 544 U.S. at 539.

28  ////

                                            8

The FAC acknowledges the government health and safety inspection regimes imposed on plaintiffs do not constitute takings. (ECF No. 51 at 62.) Instead, plaintiffs allege a taking occurred because of the denial of their "right to refuse an unqualified and abusive inspector[.]" (Id.) They allege they were severely impacted when, for example, Mr. Zavala improperly required resubmission of engineer-stamped plans before he would inspect to verify parameters and tolerances. (Id. at 27.) Plaintiffs informed Mr. Zavala this was an improper process which they could not afford due to their disabilities and Mr. Zavala stated in response "I don't buy what I can't afford." (Id. at 27 & 30.) Otherwise, though, the FAC lacks specific facts to support plaintiffs' assertions of abuse and discrimination during inspections. Statements that there were malicious misstatements, incorrect accusations, and obstruction and failure to perform ministerial duties are too vague and conclusory to be accepted as true for pleading purposes. See Sprewell, 266 F.3d at 988. The court accepts as true plaintiffs' allegations that they demanded certifications which were not provided. No claim for a regulatory taking arises from their allegation that they were denied their right to refuse an unqualified and abusive inspector.

The FAC fails to allege a taking within the meaning of the Fifth Amendment. The defendants' motions to dismiss should be granted to the extent they seek dismissal of this claim.

## C. RICO

A civil RICO claim requires allegations that establish the following: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's 'business or property.'" Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c)). RICO defines "racketeering activity" to include a host of so called predicate acts, including "any act which is indictable under" the Hobbs Act as well as "any act or threat involving ... extortion ..., which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A)-(B); see Sanford v. MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010).

The FAC purports to list predicate acts (see ECF No. 51 at 14) but the list contains various state and federal statutes or Constitutional Amendments rather than specific acts. "Civil rights violations… do not fall within the statutory definition of 'racketeering activity.'" Bowen v.

1    Oistead, 125 F.3d 800, 806 (9th Cir. 1997). Thus, plaintiffs' allegations of conspiracy to violate

2    their civil rights and resulting civil rights violations do not support a civil RICO claim. See id.

3        In their reply argument, plaintiffs clarify the predicate acts were acts of extortion using the

4    threat of the law. (ECF No. 79 at 11.) The FAC alleges, for example, "[t]he fines threatened were

5    extortionate in the amount of $10,000." (ECF No. 51 at 15.) Plaintiffs also allege, for example,

6    "communicat[ion] over wire to threaten plaintiffs with financial harm." (Id. at 57.)

7        The Hobbs Act criminalizes interference with interstate commerce by extortion, 18 U.S.C.

8    § 1951(a), with extortion being defined as "the obtaining of property from another, with his

9    consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of

10   official right," 18 U.S.C. § 1951(b)(2). For a state offense to qualify as a predicate act in a RICO

11   suit it must be "capable of being generically classified as extortionate ... [which is] defined as

12   'obtaining something of value from another with his consent induced by wrongful use of force,

13   fear, or threats.'" Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 409 (2003).

14       Thus, extortion by a public official as a RICO predicate act requires that the defendant

15   wrongfully obtain the property of another under color of official right. See Evans v. United

16   States, 504 U.S. 255, 265 (1992); Scheidler, 537 U.S. at 409. Plaintiffs do not allege any

17   defendant wrongfully obtained their money or other property under color of official right.

18   Plaintiffs do not allege facts showing that any defendant made a threat involving extortion.

19       Similarly, no pattern of racketeering activity is alleged. To satisfy the "pattern"

20   requirement, there must be at least two acts of racketeering activity within a ten-year period. 18

21   U.S.C. § 1961(5); see Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393,

22   1399 (9th Cir. 1986) (holding that under some circumstances, two acts may not be sufficient)

23   (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 n.14 (1985)). A pattern requires the

24   showing of a relationship between the predicates and the threat of continuing activity rather than

25   sporadic activity. H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989). Continuity requires

26   either "a series of related predicates extending over a substantial period of time [, i.e., closed-

27   ended continuity]," id. at 242, or "past conduct that by its nature projects into the future with a

28   threat of repetition [, i.e., open-ended continuity]," id. at 241.

The FAC fails to plead a RICO enterprise with a cohesive structure. See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001). The FAC does not set forth the structure of the alleged enterprise, instead relying on general allegations that the defendants took various steps in furtherance of the enterprise. Plaintiffs argue in reply briefing in opposition to defendants' motions that "Pangman [as County Building Official] was working behind the scenes offering the H.O.A. interpretations on how to obstruct Plaintiffs' property. These form the basis of an 'enterprise,'" which denied due process and procedural safeguards leading to [defendants] (who were not provably certified) acting with impunity to use ministerial acts with intent of obstructing the project." (ECF No. 79 at 17-18.) Conclusory allegations of enterprise and common purpose such as this do not suffice to state a claim. Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp., 235 F. Supp. 3d 1132, 1174-75 (E.D. Cal. 2017); Shaw v. Nissan N. Am., Inc., 220 F. Supp. 3d 1046, 1056 (C.D. Cal. 2016) (conclusory allegations that defendants "shared a common fraudulent purpose" in taking certain actions does not satisfy the common purpose requirement).

The FAC fails to plead the elements of a civil RICO violation. Accordingly, any RICO conspiracy claim also necessarily fails. See Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367 n.8 (9th Cir. 1992) ("Because we find that [the plaintiff] has failed to allege the requisite substantive elements of RICO, the conspiracy cause of action cannot stand."). The defendants' motions to dismiss should be granted to the extent they seek dismissal of plaintiffs' RICO claims.

### D. Federal Civil Rights Statutes (42 U.S.C. §§ 1983, 1985)

Plaintiffs assert violations of their rights under the First Amendment (retaliation for protected conduct), Fourth Amendment (right to privacy), and Fourteenth Amendment (due process and equal protection). (See ECF No. 51 at 14, 18, 35.) Plaintiffs also allege conspiracy to violate their civil rights. (Id. at 43.)

### 1. § 1983

Actions may be brought under 42 U.S.C. § 1983 to redress violations of plaintiffs' "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law. 42 U.S.C. § 1983; Monell v. Dep't

1    of Social Servs., 436 U.S. 658, 690-95 (1978). To state a claim under 42 U.S.C. § 1983, a

2    plaintiff must show (1) the defendant committed the alleged conduct while acting under color of

3    state law; and (2) the plaintiff was deprived of a constitutional right as a result of the defendant's

4    conduct. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

5         First, plaintiffs do not plausibly allege several of the defendants acted under color of law.

6    Second, plaintiffs fail to plausibly allege a violation of their rights under any of the First, Fourth,

7    and Fourteenth Amendments, or a conspiracy to violate these rights.

8         As to Ms. Perez and the SBPOA, the SBPOA acted under a private contract between itself

9    and its members. See generally Treo @ Kettner Homeowners Assn. v. Superior Ct., 166 Cal.

10   App. 4th 1055, 1066, 83 Cal. Rptr. 3d 318, 325 (2008) ("an association, with its obligations and

11   restrictions as defined in the CC & R's, essentially springs into existence when there is a

12   conveyance by the developer of a separate interest coupled with an interest in the common area or

13   membership in the association"). Courts in this circuit recognize that "a private homeowner's

14   association [in California] is not a state actor for purposes of section 1983." Kulick v. Leisure

15   Vill. Ass'n, Inc, No. CV 20-6079 DSF (PVC), 2020 WL 5752875, at *1 (C.D. Cal. Sept. 14,

16   2020), report and recommendation adopted sub nom. Kulick v. Leisure Vill. Ass'n, Inc., No. CV

17   20-6079 DSF (PVC), 2020 WL 5749986 (C.D. Cal. Sept. 24, 2020), aff'd, 851 F. App'x 759 (9th

18   Cir. 2021); see also Kulick v. Leisure Vill. Ass'n, Inc., No. CV 19-7630-E, 2019 WL 4918265, at

19   *2 (C.D. Cal. Oct. 2, 2019). Ms. Perez and the SBPOA are private actors.

20        In addition, Mark and Penny Gamble, plaintiffs' neighbors, and Ryan Steinwert, a

21   journalist, are private actors under the FAC's allegations. Similarly, plaintiffs do not allege

22   Richard Maddelena took any action in any official capacity or under any official authority. (See

23   ECF No. 51 at 47.) While private individuals can be sued under section 1983 if they conspire with

24   state actors to violate the plaintiff's civil rights, see Melara v. Kennedy, 541 F.2d 802, 804-05

25   (9th Cir. 1976), plaintiffs have not stated any claim under 42 U.S.C. § 1983 and fail to allege facts

26   showing a violation of their civil rights or a conspiracy to violate their civil rights.

27   ////

28   ////

1

### a. Retaliation

2      "To recover under § 1983 for… retaliation, a plaintiff must prove: (1) he engaged in a

3    constitutionally protected activity; (2) as a result, he was subject to adverse action by the

4    defendant that would chill a person of ordinary firmness from continuing to engage in the

5    protected activity; and (3) there was a substantial causal relationship between the constitutionally

6    protected activity and the adverse action." Blair v. Bethel Sch. Dist., 608 F.3d 540, 543 (9th Cir.

7    2010).

8          Plaintiffs allege they took protected conduct in the form of making complaints. The FAC

9    alleges plaintiff Michal Wayne made several complaints about the County's deficient process and

10   effects on plaintiffs' health. (ECF No. 51 at 35-36.) They allege the defendants retaliated against

11   them after their complaints about Mr. Zavala and after asking for credentials to be produced. (Id.

12   at 40, 42.) They further allege Supervisor Dryden's "statements on July 15, 2022, regarding

13   needing to work with Daniel Zavala had a 'Chilling Effect," on plaintiffs right to make

14   complaints." (Id. at 58.) As to retaliatory intent, plaintiffs allege they discovered through their

15   PRA request that

16   > before a no-show scheduled inspection on August 30, 2022, Planning
   > Officials were engaging in internal communications showing
17   > intentional disregard against Plaintiffs. Tim Beals on August 27,
   > 2022, states "if they respond like the others let's talk as I am done
18   > with their constant criticism." (ECF No. 162:8-11). This
   > communication implies Mr. Beals held a direct intent to retaliate for
19   > Plaintiffs['] complaints.

20   (Id. at 36.)

21         Plaintiff's allegations reasonably suggest they engaged in protected conduct, but they do

22   not plead facts showing a chronology of events from which retaliation can be inferred. Missing

23   are specific facts showing a causal connection between plaintiffs' protected activities and adverse

24   actions allegedly taken by the defendants. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir.

25   2009) (a plaintiff must show that his protected conduct was the substantial or motivating factor

26   behind the defendant's conduct). Mere speculation or conclusions that the defendants' conduct

27   was motivated by a desire to retaliate does not suffice to state a claim. See Frazier v. Dubois, 922

28   F.2d 560, 562 n. 1 (10th Cir. 1990) ("Mere allegations of constitutional retaliation will not

suffice; plaintiffs must rather allege specific facts showing retaliation[.]"). Where causation for

adverse action allegedly taken by a defendant because of plaintiffs' complaints is merely

conceivable, but not plausible, no claim is stated. See Twombly, 550 U.S. at 570.

### b. Equal Protection

To state a claim for a violation of the Equal Protection Clause under 42 U.S.C. § 1983, a

plaintiff must generally show the defendants acted with an intent or purpose to discriminate

against the plaintiff based upon membership in a protected class. See Thornton v. City of St.

Helens, 425 F.3d 1158, 1166 (9th Cir. 2005).

The FAC does not plead facts allowing an inference of intent or purpose to discriminate

by any defendant. Plaintiffs' mere conclusions that the defendants acted with intent or purpose to

discriminate do not suffice. See Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1026

(9th Cir. 1998) (a plaintiff must allege facts demonstrating "intentional unlawful discrimination

or… facts that are at least susceptible of an inference of discriminatory intent"). Moreover, the

disabled are not a protected class for purposes of equal protection under the Fourteenth

Amendment and plaintiffs do not specify another basis for equal protection. See City of Cleburne

v. Cleburne Living Center, Inc., 473 U.S. 432, 446 (1985); Lee v. City of Los Angeles, 250 F.3d

668, 687 (9th Cir. 2001).

### c. Due Process

To state a procedural due process claim, plaintiffs must allege facts showing the following

elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a

denial of adequate procedural protections. Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003);

see Bd. of Regents v. Roth, 408 U.S. 564, 569-70 (1972).

As to the specific allegations in the FAC regarding due process, plaintiffs appear to allege

a violation of due process under the Fourteenth Amendment at a May 16, 2023, County Board of

Supervisors meeting at which defendant Dryden lied, made a great effort to silence opposition,

and stopped any chance at rebuttal from the public just before the vote. (ECF No. 51 at 42.)

Plaintiffs allege Ms. Perez as Chair of the SBPOA Board violated their right to due process by

"not giving notice she was coming as required" and when the SBPOA "refused an investigation

into what the plaintiff believed was harassment for racial discrimination at the time." (Id. at 58.)
Defendant Pangman allegedly violated plaintiffs' right to due process "by not proscribing an
immediate hearing or giving notice of the availability for a hearing after there was a dispute on
the expiration date issue with their S.U.P." (Id. at 58.) In their reply argument, plaintiffs also
argue Pangman's HOA interpretations "denied due process and procedural safeguards[.]" (ECF
No. 79 at 17-18.)

Conclusory assertions of the denial of due process such as those in the FAC do not state a
due process claim. Plaintiffs do not identify the constitutionally protected liberty or property
interest that forms the basis of their due process claim or a specific process they were owed and
which was denied. A protected liberty or property interest may arise from the United States
Constitution or from state laws or policies. Wilkinson v. Austin, 545 U.S. 209, 221 (2005).
Plaintiffs had a constitutionally protected property interest in their land and residence, certainly,
but they do not plausibly allege they were deprived of that property interest by the defendants'
actions without adequate procedural protections. On the facts alleged, any liberty or property
interest at stake related to the County's permitting process.

For example, plaintiffs allege the County made an adverse permitting decision based on a
hearsay allegation, without a hearing, and that individuals sitting on the Planning Board should
have recused themselves, among other challenges. Plaintiffs do not, however, plead facts showing
that they held a constitutionally protected liberty or property interest in regard to the SUP permit,
the permitting process, or appeal of a permitting decision. Only if there were significant
substantive restrictions on the County in making a challenged permitting decision would plaintiffs
have such a property interest in that decision. See Shanks v. Dressel, 540 F.3d 1082, 1091 (9th
Cir. 2008) ("Only if the governing statute compels a result upon compliance with certain criteria,
none of which involve the exercise of discretion by the reviewing body, does it create a
constitutionally protected property interest ...") (citations and internal quotation marks omitted);
John Ketch LLC v. San Juan Cnty., 759 F. Supp. 3d 1121, 1133 (W.D. Wash. 2024) ("an
applicant does not have a protected property interest in a building permit where the permitting
scheme is discretionary"). Plaintiffs do not identify any statutes compelling some non-

15

1   discretionary result that was not obtained.

2        Plaintiffs may also be asserting a violation of due process based on the alleged re-routing

3   of a complaint for damages they submitted to the Board of Supervisors. Plaintiffs allege they filed

4   a claim for damages with the Board of Supervisors for retaliation and civil rights issues on June

5   11, 2023, and the claim was re-routed to the Planning Board, which did not have jurisdiction to

6   hear a claim for damages. (ECF No. 51 at 43.) The FAC does not specify what constitutionally

7   protected liberty or property interest was at stake. The FAC also does not plead facts or cite any

8   statutes showing a mandatory and non-discretionary requirement for handling the June 11, 2023,

9   claim for damages.

10       In the absence of factual allegations showing a constitutionally protected liberty or

11  property interest, plaintiffs do not state a due process claim. See Shanks, 540 F.3d at 1090-91;

12  Gelber v. City of Willits, No. 23-cv-00681-JSC, 2023 WL 7003241, at *3 (N.D. Cal. Oct. 23,

13  2023) (dismissing  due process claim because plaintiff "[did] not identify any statutes or

14  ordinances that contain substantive predicates governing official decisionmaking" or "identify

15  any statute with explicitly mandatory language specifying the outcome that must be reached if the

16  substantive predicates are satisfied").

17                              **d.  Fourth Amendment**

18       Plaintiffs allege Ms. Perez's trespass on their property violated "their right [under the]

19  Fourth Amendment [to be free from] unreasonable searches[.]" (ECF No. 51 at 58.) As set forth

20  above, Ms. Perez is not a state actor for purposes of plaintiffs' civil rights claims under 42 U.S.C.

21  § 1983. Plaintiffs also allege the County and Mr. Zavala conducted "malicious and unreasonable

22  inspections" (id. at 12) pursuant to which, in the absence of certificates, the County was operating

23  a scheme of conducting unreasonable searches in violation of the Fourth Amendment through

24  inspections (id. at 37).

25       The Fourth Amendment protects "[t]he right of the people to be secure in their persons,

26  houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend.

27  IV. "At [its] very core stands the right of a [person] to retreat into his own home and there be free

28  from unreasonable governmental intrusion." Silverman v. United States, 365 U.S. 505, 511

(1961). "[S]earches and seizures inside a home without a warrant are," therefore, "presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980). A consensual search does not violate the Fourth Amendment. See, e.g., Morgan v. United States, 323 F.3d 776, 781 (9th Cir.2003). Consent may be express or implied. Id. The fundamental principle of the Fourth Amendment is reasonableness. Morgan v. United States, 323 F.3d 776, 780-81 (9th Cir. 2003).

Under the FAC's allegations, plaintiffs applied for and received a building permit in connection with which several inspections occurred. Although the court understands plaintiffs to be alleging they did not consent to allegedly unqualified inspectors, the FAC does not plausibly allege a violation of their Fourth Amendment rights on these facts.

### e.    § 1983 Conspiracy

"To establish liability for a conspiracy in a [42 U.S.C.] § 1983 case, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." Crowe v. County of San Diego, 608 F.3d 406, 440 (9th Cir. 2010) (citation omitted). An actual deprivation of constitutional rights must have resulted from the alleged conspiracy. Woodrum v. Woodward County, Okl., 866 F.2d 1121, 1126 (9th Cir. 1989). As plaintiffs have not stated a claim for a violation of their civil rights under § 1983, their alleged § 1983 conspiracy claim also fails.

### 2.    § 1985(3)

A claim under 42 U.S.C. § 1985(3) claim requires "four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted). A claim under §1985(3) must be based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." United Brotherhood of Carpenters and Joiners of America v. Scott, 463 U.S. 825, 829 (1983).

The Sixth Circuit has held that section 1985(3) does not cover disability-based discrimination. Bartell v. Lohiser, 215 F.3d 550, 559 (6th Cir. 2000). But even if plaintiffs are

17

part of some suspect or quasi-suspect class for purposes of a section 1985(3) claim, they do not

allege adequate facts to support the claimed conspiracy. Conclusory allegations of conspiracy do

not state a claim. See Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989);

Karim–Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988) ("[a] mere

allegation of conspiracy without factual specificity is insufficient"). Plaintiffs do not allege facts

from which the court can infer a "meeting of the minds" among the defendants. See Gilbrook v.

City of Westminster, 177 F.3d 839, 856 (9th Cir. 1999) ("To prove a civil conspiracy, the plaintiff

must show that the conspiring parties reached a unity of purpose or a common design and

understanding, or a meeting of the minds in an unlawful arrangement." (internal quotation marks

and citation omitted)).

### E.  ADA

Although plaintiffs do not plead a distinct cause of action under the ADA, it appears they

may seek to proceed under the Title II of the ADA. Under Title II of the ADA, "no qualified

individual with a disability shall, by reason of such disability, be excluded from participation in or

be denied the benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by any such entity." 42 U.S.C. § 12132. Title II authorizes individuals to seek

redress for violations by bringing suits for injunctive relief or money damages. 42 U.S.C. §

12133.

"To establish a violation of Title II of the ADA, a plaintiff must show (1) she is a qualified

individual with a disability; (2) she was excluded from participation in or otherwise discriminated

against with regard to a public entity's services, programs, or activities; and (3) such exclusion or

discrimination was by reason of her disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir.

2002). To recover monetary damages under Title II of the ADA, a plaintiff must also prove

intentional discrimination on the part of the defendants. Duvall v. County of Kitsap, 260 F.3d

1124, 1138 (9th Cir. 2001). The standard for intentional discrimination is deliberate indifference,

which requires the plaintiff to show that the defendant knew "harm to a federally protected right

[wa]s substantially likely" and failed to act upon that likelihood. Id. at 1139.

18

1   Plaintiffs allege they suffered discrimination by reason of their disabilities described as

2   follows: "Michal Wayne is diagnosed with ADHD, CPTSD, and several physical health

3   conditions. Richard Wayne has a congenital spinal defect called scoliosis, degenerated spinal

4   disks, and difficulties communicating with symptoms that are typical of autism." (ECF No. 51 at

5   13.) Plaintiffs also allege defendant Filippini used a "slur, 'special ed permit,'" during a hearing

6   which "proved that the planning board absolutely knew plaintiffs [were disabled and] had been

7   asking for accommodations all along[.]" (Id. at 48; see also ECF No. 1 at 254.)

8   The term "disability" means "a physical or mental impairment that substantially limits one

9   or more major life activities of such individual," having a record of such impairment, or being

10  regarded as having such an impairment. 42 U.S.C. § 12102(1). Major life activities include, but

11  are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping,

12  walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating,

13  thinking, communicating, and working. 42 U.S.C. § 12102(2). "Substantially limited" means a

14  person is "significantly restricted as to condition, manner or duration under which [she] can

15  perform [the] particular major life activity as compared to ... [an] average person in the general

16  population." Coons v. Sec'y of U.S. Dep't of Treasury, 383 F.3d 879, 885 (9th Cir. 2004).

17  Plaintiffs do not specifically allege how any of their disabilities substantially limit one or

18  more major life activities. The conditions and symptoms they list are of the type that might or

19  might not substantially limit a person's life activities, depending on individual circumstances.[3]

20  See generally, e.g., Weaving v. City of Hillsboro, 763 F.3d 1106, 1113 (9th Cir. 2014)

21  (discussing ADHD). Nevertheless, drawing all reasonable inferences plaintiffs' favor, they

22  plausibly allege they are qualified individuals.

23  However, plaintiffs do not adequately allege they were excluded from participation in or

24  otherwise discriminated against by reason of their disabilities. Their relevant allegations in the

25  FAC include the following:

26  _____

27  [3] The enabling regulations explicitly list autism as an example of a disabling impairment. 29
    C.F.R. § 1630.2(j)(3)(iii). Here, although plaintiffs allege plaintiff Richard Wayne has
    "difficulties communicating with symptoms that are typical of autism" that is not the same as

28  alleging he has a diagnosis of autism.

> On May 12, 2023, Plaintiffs sent an ADA ordinance mandated request to County Treasurer Van Maddox who was acting as The ADA ombudsman. Plaintiffs requested disability-based assistance with the planning department and protection from Planning Official's retaliation. [….] Maddox… deliberately disregarded Plaintiff's requests for advocacy based on disabilities and did not perform an individualized investigation of their needs by refusing to schedule the mandatory conference procedure outlined in Sierra County Resolution 2013-078.

(ECF No. 51 at 41 (citations omitted).)

And further, "Tim Beals violated plaintiffs' rights under Title II of the ADA by not providing staff trained to deal with cognitive or mental disabilities and by providing staff that was negligently hired without proper certifications which aggravated plaintiffs' disabilities." (ECF No. 51 at 58.) "Brandon Pangman violated Title II of the ADA by not granting an extension necessary for an S.U.P. based on a request for an accommodation for their disabilities under U.N.R.U.H. and the integration mandate of the ADA." (Id.)

It appears plaintiffs may seek to proceed on a theory that they were denied reasonable accommodations. Failure to provide reasonable accommodations can constitute discrimination. Updike v. Multnomah Cnty., 870 F.3d 939, 951 (9th Cir. 2017). "[T]he issue of reasonableness depends on the individual circumstances of each case," and the determination of reasonableness "requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations." Wong v. Regents of Univ. of Cal., 192 F.3d 807, 818 (9th Cir. 1999). The "reasonable modification" provision of the regulations implementing Title II of the ADA states:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130.

Plaintiffs' allegations about the denial of reasonable accommodations are vague, conclusory, and lack necessary supporting facts. It is not enough to allege, for example, that they requested and were denied disability-based assistance or that the County never provided reasonable accommodations. Plaintiffs do not state an ADA reasonable accommodation claim

1    because they do not adequately set forth any specific reasonable accommodation they requested

2    and were denied.

3        Plaintiffs identify one alleged reasonable accommodation not granted – an SUP extension

4    – and they allege a mandatory conference procedure was not undertaken. Plaintiffs do not,

5    however, allege any facts showing when they requested an extension as a reasonable

6    accommodation for their disabilities, how they requested it, to whom they made the request, or

7    what type and length of extension they sought which is alleged to constitute a reasonable

8    accommodation. Similarly, they do not allege facts about their "requests for advocacy" that show

9    a mandatory conference procedure should have been initiated.

10       Thus, the FAC lacks specific factual allegations necessary to move plaintiffs' ADA claim

11   from conceivable to plausible. Merely alleging the ADA was violated when no extension was

12   granted and conference procedures were not initiated does not suffice to state a claim.

13       In addition, the proper defendant for plaintiffs' Title II ADA claims is the public entity

14   responsible for the alleged discrimination. See Everson v. Leis, 556 F.3d 484, 501 n.7 (6th Cir.

15   2009) (collecting cases). Title II of the ADA does not provide for suit against public officials

16   acting in their individual capacity.[4] Id. at 501.

17       Accordingly, defendants' motions to dismiss should be granted as to plaintiffs' claims

18   under the ADA. Plaintiffs should be granted leave to amend their ADA claim only against the

19   public entity responsible for the alleged discrimination.

20                              **F.  State-Law Claims**

21       As set forth above, it is being recommended that all federal claims over which this court

22   has original jurisdiction be dismissed. The court should decline to exercise supplemental

23   jurisdiction over plaintiffs' state-law claims in the absence of a cognizable federal claim upon

24   which relief can be granted. See 28 U.S.C. § 1367(c)(3); Acri v. Varian Assocs., Inc., 114 F.3d

25   999, 1000 (9th Cir.), supplemented, 121 F.3d 714 (9th Cir. 1997), as amended (Oct. 1, 1997).

26

27   ───────────────
     [4] Likewise, no claims lie under 42 U.S.C. § 1983 against defendants in their individual capacities
     to vindicate rights created by the ADA. See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir.
28   2002).

### G.  Leave to Amend and Dismissal of Defendants

Leave to amend should be freely granted when justice so requires. However, "[v]alid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988); see also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have to allow futile amendments).

It clearly appears amendment would be futile as to plaintiffs' Fifth Amendment Takings claim, civil RICO and RICO conspiracy claims, and federal civil rights and civil rights conspiracy claims other than procedural due process and retaliation. If plaintiffs believe they can allege further facts to state a plausible Takings claim, civil RICO claim, or other federal civil rights claim, then plaintiffs shall clearly state those additional factual allegations in any objections to these findings and recommendations.

The undersigned recommends plaintiffs be granted leave to file a second amended complaint presenting only their claim under Title II of the ADA against the public entity responsible for the alleged violation, their due process and retaliation claims under 42 U.S.C. §1983 against County official defendants involved with the permitting process, and any related state-law claims. Defendants SBPOA, Rebekah Perez, Mark Gamble, Penny Gamble, Ryan Steinwert, Sandra Groven, Mike Fisher, and Richard Maddelena would not be proper defendants for these claims and should be dismissed from this federal case at this time.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47 (1957). Plaintiffs' FAC was unwieldy at 70 pages in length plus exhibits and contained extraneous material such as legal argument. The undersigned recommends plaintiffs be given a 25-page limit for any further amended complaint they are granted leave to file.

### IV.    Recommendation

For the reasons set forth above, IT IS HEREBY RECOMMENDED as follows:

1.  The motions to dismiss by defendants Sierra Board Property Owners Association, Rebekah Perez, Mark Gamble, Penny Gamble, Sandra Groven, Mike Fisher, Ryan Steinwert, and Richard Maddelena (ECF Nos. 59, 65, 67, 72, 75, 100) be granted on grounds that plaintiffs fail to state a cognizable federal claim against any of these defendants and that the court declines to exercise supplemental jurisdiction over any state-law claims against these defendants, who should be dismissed from the case.

2.  The motions to dismiss by defendants Sierra County, Sierra County Board of Supervisors, Sharon Dryden, Paul Roen, Lee Adams, Lila Huer, Terry LeBlanc, Mike Fisher, Sandra Grovin, Rhetta Vander Ploeg, Van Maddox, Brandon Pangman, Tim Beals, Joseph Danny Zavala, Bonnie Vierra, Elizabeth Morgan, and Michael Filippini (ECF Nos. 58, 60, 61, 62, 63, 64, 66, 68, 69, 70, 71, 73, 74, 98) also be GRANTED.

3.  Plaintiffs be granted leave to file a second amended complaint presenting only their Title II ADA claim against the public entity responsible for the alleged violation, their due process and retaliation claims under 42 U.S.C. §1983 against County official defendants, and any related state-law claims.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within seven (7) days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  August 19, 2025

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8, wayn25cv1113.mtd

23